# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## 2013-5009

MARK G. ABBEY, L. ROGER ABEL, ETHAN ABELOV,
KURT G. ABERHORN, MARC M. ABEYTA, GARY LEE ABPLANALP,
STEPHEN J. ABRAHAM, LYNN M. ABRAM, RUSSELL O. ABSHER,
GEORGE G. ACAMPORA, TRACEY E. ACAMPORA, DIANE L. ACEVES,
THOMAS M. ACHIN, MICHAEL R. ACKERMAN, KRIS ACORD,
ANDREW G. ACRES, JAMES P. ADAIR, JEFFREY S. ADAIR,
LEONARD J. ADAMCZYK, MICHAEL ADAME, STEVE ADAMEK,
AMANDA M. ADAMS, BETH E. ADAMS, CARL T. ADAMS,
and CHARLES B. ADAMS,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of Federal Claims in 07-CV-272,
Chief Judge Emily C. Hewitt

## BRIEF OF PLAINTIFFS-APPELLEES, MARK G. ABBEY, ET AL.

GREGORY K. MCGILLIVARY
SARA L. FAULMAN
WOODLEY & MCGILLIVARY
1101 Vermont Ave. NW
Suite 1000
Washington, D.C. 20005
Tel: (202) 833-8855

August 2, 2013                            Attorneys for Plaintiffs-Appellees

**Form 9**

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

_____

_____

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____

_____

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____

_____

_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____

_____

_____          _____
            Date                           Signature of counsel

                                   _____
                                        Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE ............................................................. 2

   1. Nature of the Case ................................................................. 2

   2. Disposition Below ................................................................. 3

STATEMENT OF FACTS ................................................................. 3

   1. Litigation Background ............................................................ 3

   2. The Appropriations Act Specifically States That the Provisions of Title 5 Permitting the Use of Compensatory Time and Credit Hours in Lieu of FLSA Overtime "Shall Not Apply" to the FAA .............................................. 5

   3. The FAA's PMS Document Fails To Include Any Suggestion That the FAA Believed It Was Authorized To Provide Controllers With Compensatory Time Or Credit Hours In Lieu Of FLSA Overtime ......................................... 6

   4. There Is No Evidence That Congress Was Made Aware of, or Approved of, Any Plan on the FAA's Part to Provide Credit Hours or Compensatory Time in Lieu of FLSA Overtime .............................................................. 7

   5. Although Claiming Authority to "Adopt" Title 5 Exceptions to the FLSA, the FAA Failed to Comply with Those Provisions ...................................... 9

SUMMARY OF THE ARGUMENT ................................................... 10

ARGUMENT .............................................................................. 16

I.  THE TRIAL COURT HAS TUCKER ACT JURISDICTION OVER FLSA CLAIMS AGAINST THE FEDERAL GOVERNMENT ................................. 16

   A. The FLSA Does Not Withdraw Tucker Act Jurisdiction For Claims Against The Federal Government ............................................................. 17

II.  THE FAA REFORM LEGISLATION DOES NOT PERMIT THE FAA TO DEPRIVE THE CONTROLLERS OF THE OVERTIME PROTECTIONS OF THE FLSA .............................................................................. 23

   A. Section 7(a) of the FLSA Requires That the Controllers Be Paid Overtime in Cash and at One and One-Half Times Their Regular Rates ....................... 23

      1. The FAA's Policy of Providing Hour-for-Hour Compensatory Time and Credit Hours for Overtime Work Violates the FLSA ............................. 24

i

2.  None of the Statutory Exceptions in the FLSA to the Requirement That Monetary Compensation Be Paid for Overtime or That It Be Paid at One and One-Half Times Employees' Regular Rates of Pay Apply to the Controllers ..................................................................................26

3.  The Statutory Authority That Permits Payment of Compensatory Time in Lieu of Cash for Certain Federal Employees Also Does Not Apply to the Controllers ..................................................................................28

B.  The FAA Reform Legislation Does Not Permit the FAA to Compensate Employees With Compensatory Time or Credit Hours For FLSA Overtime Hours................................................................................................30

1.  Under Well-Established Rules of Statutory Construction, the Appropriations Act Does Not Grant the FAA the "Flexibility" to Design and Implement a PMS That Violates the FLSA.......................................30

2.  The Legislative History Does Not Grant the FAA the "Flexibility" to Design and Implement a PMS That Violates the FLSA ..........................37

3.  Neither the Text of the Appropriations Act Nor the Case Law Supports the FAA's Interpretation of "Notwithstanding the Provisions of Title 5 and Other Federal Personnel Laws" .......................................................40

4.  The Case Law Does Not Grant the FAA Discretion to Design a PMS That Violates the FLSA or Other Applicable Law ..................................41

5.  Congress Did Not Implicitly Approve of, or "Ratify," the FAA's Interpretation of the Statute By Referring to the PMS in Section 40122(a) or (g) ....................................................................................44

    a)  The Legislative History .................................................................44

    b)  The PMS Document ......................................................................48

6.  The Statute Does Not Authorize the FAA and Union Representatives to Agree to Practices That Violate the FLSA.............................................50

7.  The FAA's Interpretation of Section 40122(g) Is Not Entitled to *Chevron* Deference...................................................................................................51

8.  OPM's Regulation Authorizing Straight-Time Compensatory Time and Credit Hours Does Not Apply to the FAA.............................................54

CONCLUSION ....................................................................................................57

# TABLE OF AUTHORITIES

## Supreme Court Cases

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ................................30

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981) ..................... 19, 54

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) .........................54

*CFTC v. Schor*, 478 U.S. 833 (1986)...................................... 49, 57

*Chevron v. Natural Res. Def. Council*, 467 U.S. 837 (1984) .................... 55, 56, 57

*City of Arlington v. FCC*, 133 S. Ct. 1863 (2013) ....................................56

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) ........................30

*D. Ginsberg & Sons v. Popkin*, 385 U.S. 204 (1930) .............................36

*Dodd v. United States*, 545 U.S. 353 (2005)..........................................34

*Forest Grove School Dist. v. T.A.,* 557 U.S. 230 (2009) ........................49

*Hinck v. United States*, 550 U.S. 501 (2007) ..........................................23

*Horne v. Department of Agriculture*, 2013 U.S. LEXIS 4357 (June 10, 2013)......22

*HSC-Laundry v. United States*, 450 U.S. 1 (1981)......................... 16, 36

*IBP v. Alvarez*, 546 U.S. 21 (2005)..........................................................33

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
    559 U.S. 573 (2010) .......................................................................49

*Lamie v. United States*, 540 U.S. 526 (2004) .......................................25

*Lane v. Pena*, 518 U.S. 187 (1996).......................................................40

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990)...................................26

*Moreau v. Klevenhagen*, 508 U.S. 22 (1993) .......................................31

*Perry v. United States*, 2013 U.S. Claims LEXIS 593 (June 4, 2013) ..................25

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976)......................37

*United States v. Bormes*, 133 S. Ct. 12 (2012) ............................... passim

*United States v. Smith*, 499 U.S. 160 (1991) ........................................39

*United States v. Testan*, 424 U.S. 392 (1976)........................................22

*United States v. United Cont'l Tuna*, 425 U.S. 164 (1976) ....................37

## Court of Appeals Cases

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.* 515 F.3d 1150
  (11th Cir. 2008) ................................................................28

*B&G Contr. Co. v. Dir., OWCP*, 662 F.3d 233 (3d Cir. 2011) ........................ 16, 36

*Bernard v. IBP, Inc.,* 154 F.3d 259 (5th Cir. 1998)................................................54

*Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993) ............................................29

*Brennan v. Heard*, 491 F.2d 4 (5th Cir. 1974)............................................29

*Brodowy v. United States*, 482 F.3d 1370 (Fed Cir. 2007)........................ 45, 46, 47

*De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007) ............................33

*Disabled Am. Veterans v. Sec'y of V.A.*, 419 F.3d 1317 (Fed. Cir. 2005) ..............49

*El-Sheikh v. United States*, 177 F.3d 1321 (Fed. Cir. 1999)...................................24

*Gieg v. DRR, Inc.*, 407 F.3d 1038 (9th Cir. 2005)...................................................30

*Gonzalez v. Dep't of Transp.*, 551 F.3d 1372 (Fed. Cir. 2009) ....................... passim

*Graham v. Henegar*, 640 F.2d 732 (5th Cir. 1981) ...................................24

*In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. 2010) ......................36

*Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012)...................................................39

*Parker v. King*, 935 F.2d 1174 (11th Cir. 1991)...................................................24

*Saraco v. United States*, 61 F.3d 863 (Fed. Cir. 1995)............................................24

*Doe v. United States*, 513 F.3d 1348 (Fed. Cir. 2008) ............................................32

*Shahriar v. Smith & Wollensky Restaurant Group, Inc.* 659 F.3d 234
  (2d Cir. 2011) ................................................................28

*Shoshone Indian Tribe v. United States,* 364 F.3d 1339 (Fed. Cir. 2004) ..............44

*Southwest Marine of San Francisco, Inc. v. United States,* 896 F.2d 532
  (Fed. Cir. 1990) ....................................................... 16, 36, 37

*United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011)........................................36

*Vela v. City of Houston*, 216 F.3d 659 (5th Cir. 2001)............................................30

*Waters v. Rumsfeld*, 320 F.3d 265 (D.C. Cir. 2003)................................................24

## District Court and Court of Federal Claims Cases

*Aamold v. United States*, 39 Fed. Cl. 735 (1997) ....................................................59

*Abbey v. United States*, 82 Fed. Cl. 722 (2008)........................................................7

*Abbey v. United States*, 99 Fed. Cl. 441 (2011)........................................................8

*APG, L.P. v. United States*, 41 Fed. Cl. 607 (1998) ................................................26

*Bull v. United States*, 65 Fed. Cl. 407 (2005) ..........................................................54

*Bull v. United States*, 68 Fed. Cl. 212 (2007) ..........................................................58

*Doe v. United St7es,* 74 Fed Cl. 592 (2007) ............................................................32

*Edelmann v. United States*, 76 Fed. Cl. 376 (2007) ................................................26

*Farmer v. Employment Sec. Comm'n*, 4 F.3d 1274 (1993).....................................36

*Fed. Air Marshals v. United States*, 74 Fed Cl. 484 (2006) ............................ 32, 45

*Fed. Air Marshals v. United States,* 84 Fed. Cl. 585 (2008). ........................... 40, 45

*Matthews v. United States*, 72 Fed. Cl. 274 (2006) ..................................................26

*Whalen v. United States*, 93 Fed. Cl. 579 (2010)......................................................44

*Zumerling v. Devine*, 769 F.2d 745 (1981)................................................. 24, 25, 26

## Federal Statutes

5 U.S.C. § 5543 .......................................................................................... passim

5 U.S.C. § 5596.................................................................................... 39, 47

5 U.S.C. §§ 6121-6128 ............................................................................... passim

5 U.S.C. § 6122 ............................................................................... 19, 33, 44, 60

5 U.S.C. § 6123 ............................................................................... 17, 33, 39, 53

5 U.S.C. § 6126....................................................................................................13

5 U.S.C. § 6128 ............................................................................... 17, 33, 39

5 U.S.C. §§ 6120-6133 ......................................................................................33

5 U.S.C. 2105 ......................................................................................................59

5 U.S.C. 5542 ......................................................................................................59

7 U.S.C. § 608 .....................................................................................................22

15 U.S.C. § 1681 .................................................................................................21

28 U.S.C. § 1391 ...................................................................................26

28 U.S.C. § 1491 ............................................................................... 5, 20

28 U.S.C. § 1631 ...................................................................................26

28 U.S.C. § 610 .....................................................................................26

29 U.S.C. § 201 .....................................................................................28

29 U.S.C. § 203 .......................................................................... 23, 28, 31

29 U.S.C. § 204 ............................................................................... 58, 59

29 U.S.C. § 207 ............................................................................. passim

29 U.S.C. § 213 .....................................................................................31

29 U.S.C. § 216 ....................................................................... 23, 24, 25, 26

29 U.S.C. § 633 .....................................................................................25

49 U.S.C. § 106 .....................................................................................43

49 U.S.C. § 40122 ......................................................................... passim

## Federal Regulations

5 C.F.R. § 551.501 ......................................................................... 30, 60

5 C.F.R. § 551.531 ......................................................................... passim

29 C.F.R. § 531.27 ................................................................................29

29 C.F.R. § 778.107 ..............................................................................30

29 C.F.R. § 778.108 ..............................................................................30

29 C.F.R. § 778.109 ..............................................................................30

## Other Authorities

H.R. Rep. No. 104-475 ..........................................................................42

S. Rep. No. 104-251 ............................................................... 41, 42, 43, 50

Department of Transportation and Related Agencies Appropriations Act, 1996,
   Pub. L. 104-50, 109 Stat. 436 (Nov. 15, 1995) .....................................10

Federal Aviation Reauthorization Act of 1996, Pub. L. 104-264 ............................12

Wendell H. Ford Aviation Investment and Reform Act for the 21st
   Century, P.L. 106-181 .......................................................................10

1984 DOLWH LEXIS 14 (May 8, 1984) ...............................................................29

1998 DOLWH LEXIS 89 (Nov. 19, 1998) ............................................................29

64  Fed. Reg. 69180 (Dec. 10, 1999) ..................................................................59

56 Fed. Reg. 20339 (May 3, 1991) ......................................................................59

**Treatises**

N. Singer & J. Singer, 2A *Sutherland Statutes and Statutory Construction* § 46:5 .............................................................................36

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. Rule 47.5, appellees' counsel states that we are unaware of any other appeal in or from this action that was previously before this Court or any other appellate court under the same or similar title. Appellees' counsel further states that we are unaware of any case pending in this or any other court that will directly affect or be affected by this Court's decision in this appeal.

## STATEMENT OF THE ISSUES

1.  Whether the Court of Federal Claims had jurisdiction under the Tucker Act, 28 U.S.C. § 1491, over plaintiffs' Fair Labor Standard Act ("FLSA") claims against the Government, given that the FLSA does not precisely define the appropriate forum in which suit under that Act is to be brought?

2.  Whether the Court of Federal Claims correctly held that the Federal Aviation Administration ("FAA") must comply with the overtime requirements of the FLSA because the Department of Transportation and Related Agencies Appropriations Act of 1995, 49 U.S.C. § 40122 (g), stated that the FLSA exemptions in 5 U.S.C. §§ 5543 and 6121-6128 "shall not apply" to the FAA's personnel management system, and no other exceptions to the overtime requirements of section 7(a) of the FLSA apply to the FAA?

3.  Whether the Court of Federal Claims correctly held that 5 C.F.R. § 551.531 was issued by the Office of Personnel Management in implementation of Title 5 provisions that do not apply to the FAA and, therefore, it cannot provide authority for the FAA to exempt itself from the overtime requirements of the FLSA?

## STATEMENT OF THE CASE

### 1.  Nature of the Case

This is an FLSA action brought by air traffic controllers and traffic management coordinators ("Controllers") against the FAA, alleging that the FAA violated the overtime pay requirements of section 7(a) of the FLSA by providing compensatory time and credit hours for hours worked over 40 hours a week in lieu of cash overtime pay, and doing so at straight-time rates rather than at a rate of one and one-half times their regular rates of pay.  As authority for doing so, the FAA relied upon its personnel management system ("PMS"), which it developed pursuant to legislation enacted in 1995, and now codified at 49 U.S.C. §§ 40122 (g) (hereinafter "the Appropriations Act").  The FAA purported to have "adopted" certain FLSA overtime exceptions, 5 U.S.C. §§ 5543 and 6121-6128, which it claimed provided it with authority to provide compensatory time and credit hours in lieu of FLSA overtime pay.

In directing the FAA to develop and implement a new PMS, however, the Appropriations Act expressly provided that "the provisions of title 5 *shall not apply*" to the PMS.  While the act listed certain exceptions – provisions of title 5 that were to continue to apply – §§ 5543 and 6121-6128 were not included in that list.  The FAA nevertheless claimed that the Appropriations Act provided it with the "flexibility" to "adopt" any provisions of title 5 it wished, including §§ 5543

and 6121-6128.  Thus, even though it did not comply fully with those provisions, the FAA relied upon them as authority for its practices.

The Court of Federal Claims held that, under the Appropriations Act, the exceptions to the FLSA's overtime requirements at §§ 5543 and 6121-6128 do not apply to the FAA and it was therefore required to comply with section 7(a) of the FLSA.  The court further held that an OPM regulation implementing the FLSA exceptions in §§ 5543 and 6121-6128 did not apply to the FAA.  Consequently, the court held that the FAA had violated the overtime requirements of the FLSA.

**2.  Disposition Below**

The decision of the Court of Federal Claims granting partial summary judgment for plaintiffs as to liability with respect to Count II of their complaint is reported at *Abbey v. United States*, 82 Fed. Cl. 722, 736 (2008).  JA 2.

The final judgment of the Court of Federal Claims is at JA 1.

## STATEMENT OF FACTS

**1.     Litigation Background**

Appellees are Controllers currently or formerly employed by the FAA.  JA 87.  They brought suit in the Court of Federal Claims in 2007 alleging, among other things, that the FAA violated the overtime pay requirements of section 7(a) of 29 U.S.C. § 207(a) by providing Controllers with compensatory time or credit

hours and at hour-for-hour rates.  JA 73-86.[1]  Although acknowledging that it is

subject to the FLSA (JA 88; FAA Brief, 18-19), the FAA moved to dismiss the

lawsuit, arguing that it has authority under the Appropriations Act of 1995, 49

U.S.C. § 40122 (g), to adopt 5 U.S.C. §§ 5543 and 6121-6128, which permit

federal agencies to provide compensatory time off and credit hours in lieu of FLSA

cash overtime pay to certain employees.  JA 10.

The Honorable Chief Judge Emily Hewitt of the Court of Federal Claims

disagreed and granted summary judgment for the Controllers on liability.

Specifically, on July 31, 2008, the court found that, absent an express statutory

exception, the FLSA overtime provisions of section 7(a) apply to the FAA; that,

although the FLSA contained exceptions to its overtime requirements, ***none*** of

those exceptions was applicable to the Controllers (JA 11, 12); and that the FAA

had thus violated the FLSA through its "payment of hour-for-hour compensatory

time and credit hours" (JA 27).

The court ultimately held a trial in March of 2012 concerning Count II and

whether, *inter alia*, the FAA acted in good faith such that its violation of the FLSA

---

[1] The Controllers also alleged additional FLSA violations, including the FAA's
failure to properly compute their overtime rate (Count I), and the FAA's failure to
pay them for all work suffered and permitted (Count III).  JA 73-86.  The court
held that the FAA violated the FLSA when it failed to include certain payments to
Controllers in the rate at which their FLSA overtime was calculated.  *Abbey v.
United States*, 99 Fed. Cl. 441 (2011).  The parties ultimately settled Counts I and
III.  JA 1094.

does not entitle the Controllers to liquidated damages.  During that trial the FAA

presented evidence that James Whitlow, the FAA's primary legal  resource with

respect to personnel reform, had reviewed title 5 "over a weekend" and concluded

that the language of the Appropriations Act, which states that the vast majority of

title 5 "shall not apply" to the FAA, "just wouldn't make sense."  JA 92, 187, 538.

Mr. Whitlow's testimony also demonstrated that: the FAA failed to specifically

consider or articulate a basis for its authority to exempt itself from the FLSA's cash

overtime requirements and instead provide compensatory time and credit hours;

the FAA failed to consult with either the Department of Labor ("DOL") or OPM;

and, while the FAA itself recognized that the use of compensatory time should be a

subject of further study, it failed ever to undertake such a study.  JA 203-04, 208-

09, 575-77.

　　　At the close of trial, the court entered judgment in favor of the plaintiffs.  JA

1.  The FAA filed the instant appeal following the court's entry of judgment.  JA

72a.

## 2.　　The Appropriations Act Specifically States That the Provisions of Title 5 Permitting the Use of Compensatory Time and Credit Hours in Lieu of FLSA Overtime "Shall Not Apply" to the FAA

　　　On November 15, 1995, in section 347 of the Appropriations Act, Congress

mandated that the FAA develop a new PMS.  Section 347(b) and (c) state, in

relevant part, that:

(b) ***The provisions of title 5, United States Code, shall not apply to the new personnel management system*** developed and implemented pursuant to subsection (a), with the exception of—

> "(1) section 2302(b), relating to whistleblower protection;
> " . . .
> "(7) chapters 83–85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage.

(c) This section shall take effect on April 1, 1996.  Department of Transportation and Related Agencies Appropriations Act, 1996, Pub. L. 104-50, 109 Stat. 436 (Nov. 15, 1995) (emphasis added) ("Appropriations Act").

The list of provisions enumerated in section 347 that continue to "apply" to the FAA does *not* include 5 U.S.C. § 5543 or §§ 6121-6128, and the FAA admits that the new PMS it was tasked to create is not covered by those provisions.  JA 13, 1090.[2]

**3.    The FAA's PMS Document Fails To Include Any Suggestion That the FAA Believed It Was Authorized To Provide Controllers With Compensatory Time Or Credit Hours In Lieu Of FLSA Overtime**

The Appropriations Act directed that the FAA's new PMS be implemented on April 1, 1996.  The evidence at trial showed that Mr. Whitlow undertook to draft a document sketching out the new plan.  Based upon this review and his belief that Section 347 could not be read literally, Mr. Whitlow determined that the FAA was permitted to incorporate certain title 5 provisions into the FAA's PMS.

---

[2]  In 2000, the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("the Ford Act"), P.L. 106-181, was passed.  That Act, among other things, directed that section 347 of the Appropriations Act be codified at 49 U.S.C. § 40122(g)(2), without any relevant change to its original language.

JA 538.  He drafted a version of the PMS (the "PMS Document"), which was circulated to others in the FAA and the Department of Transportation ("DOT").  JA 546.  Ultimately, the PMS Document was presented during a meeting of FAA and DOT employees and signed by Administrator David R. Hinson.  JA 557; *see also* JA 1036-85.

The PMS Document acknowledges that the "FAA's new personnel management system is exempt from all of Title 5" with certain exceptions and purports to enumerate those provisions that continue to "apply."  Not listed among those enumerated provisions are §§ 5543 or 6121-6128 of title 5.  Indeed, nowhere in the PMS document is it suggested that it means to apply §§ 5543 or 6121-6128 of title 5; nowhere does it suggest that the FAA believes it is exempt from the FLSA; and nowhere does it state that the Agency intends to provide compensatory time or credit hours in lieu of FLSA overtime pay.[3]

**4.    There Is No Evidence That Congress Was Made Aware of, or Approved of, Any Plan on the FAA's Part to Provide Credit Hours or Compensatory Time in Lieu of FLSA Overtime**

Once Administrator Hinson signed the PMS Document, the FAA decided to provide some type of briefing at Congress.  JA 558.  The meeting occurred a few weeks after the April 1, 1996 deadline and copies of the PMS Document were

---

[3] The PMS states only that compensatory time shall be provided in lieu of "premium pay" for employees who miss work days because of their religious beliefs.  JA 1058.

made available to attendees.  JA 558, 560.  The FAA has no idea who, or how many people, attended the meeting.  JA 558-59.  The meeting was not a Congressional hearing and there is no evidence that any member of Congress was aware of the meeting.

On October 9, 1996, Congress passed the Federal Aviation Reauthorization Act of 1996, Pub. L. 104-264, 110 Stat. 3213 ("the Improvement Act").  Section 253 of this Act[4] refers to "the personnel management system initially implemented . . . on April 1, 1996," and acknowledges that the FAA is still "developing and making changes" to that PMS.  The Improvement Act does not, however, refer to or incorporate the PMS *Document* signed by Administrator Hinson, does not in any way suggest that Congress has reviewed or approved the PMS Document (or the PMS itself), and does not state that the FAA may incorporate any provision of title 5 it deems appropriate.  Instead, the Improvement Act left unchanged the Appropriation Act's mandate that the "provisions of title 5 . . . ***shall not apply*** to the new personnel management system."  *Id*. (emphasis added).  There is no mention of the FLSA whatsoever in the 1996 Act or in the legislative history to the Act.

---

[4] Section 253 is now codified, with changes not relevant here, at 49 U.S.C. § 40122(a).

**5.    Although Claiming Authority to "Adopt" Title 5 Exceptions to the FLSA, the FAA Failed to Comply with Those Provisions**

The FAA provided both compensatory time and credit hours to Controllers who performed work outside of their regularly scheduled workweek.  JA 89, 228-29.  Such hours constitute overtime under the FLSA, which requires that employees be paid at a rate of one and one-half times their regular rate for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a).

From May 2004 to 2006, the FAA permitted controllers to accumulate unlimited amounts of credit hours which had no cash value.  JA 170, 231.  The FAA admits this even though, under 5 U.S.C. § 6126, an employee can accumulate a maximum of 24 credit hours and all banked credit hours must be cashed out when an employee leaves employment.  JA 182-83.  The FAA admits that many plaintiffs ultimately accrued more than 24 hours of credit hours.  JA 90.  Even after 2006, FAA policies provided that credit hours in excess of 24 hours had no cash value. JA 89, 171, 175, 177, 464, 598, 656.

Effective October 1, 2009, the FAA discontinued its policy of providing compensatory time and credit hours in lieu of cash overtime compensation to the Controllers. Since October 1, 2009, the Controllers have received cash overtime compensation at one and one-half times their regular rates of pay.  JA 89, 160, 234.

## SUMMARY OF THE ARGUMENT

This is an FLSA case to recover unpaid overtime compensation on behalf of
Controllers employed by the FAA.  The Court of Federal Claims found that the
FAA violated the basic requirements of section 7(a) of the FLSA when it provided
compensatory time and credit hours (which had no cash value) at hour-for-hour
rates as compensation for overtime work.  JA 2.  Section 7(a) of the FLSA requires
cash overtime to be paid at the rate of one and one-half times an employee's regular
rate of pay for each hour worked in excess of forty hours a week.  29 U.S.C. §
207(a).

On appeal, the FAA first alleges that under the Supreme Court's decision in
*United States v. Bormes*, 133 S. Ct. 12 (2012), this Court is without jurisdiction to
hear FLSA claims against the Government.  The FAA is mistaken.  In *Bormes,* the
Court held that where a statute waives the Government's sovereign immunity and
specifies the precise court in which the suit may be brought, the case must be
brought in that court and not pursuant to the Tucker Act.  *Id.* at 18.  The FLSA,
however, does *not* specify the court in which FLSA actions may be brought,
instead stating only that actions may be brought in "any state or federal court of
competent jurisdiction."  Thus, the Tucker Act must fill this "gap" in FLSA cases
against the federal government by conferring jurisdiction in the Federal Court of
Claims.  It is noteworthy that the FAA itself fails to identify any court that the

FLSA specifies in which to file actions against the Government. Instead, it asks the Court to "infer" which court Congress intended, which is directly contrary to the holding in *Bormes*.

Regarding the merits, it is undisputed that, although the FLSA contains several exceptions to the requirements of section 207(a), none of those exceptions apply to the Controllers. Furthermore, there are two statutory exceptions to section 7(a) that are contained in title 5, which provide for compensatory time and credit hours, although unlike the FAA's practice, these statutory exceptions require credit hours to have cash value and limit the number of credit hours that an employee can accumulate to 24 hours. 5 U.S.C. § 5543 (compensatory time); 5 U.S.C. §§ 6121-6128 (credit hours). These statutory exceptions to the FLSA contained in title 5 do not apply to the Controllers because the Appropriations Act expressly states in a section entitled "Applicability of title 5" that "[t]he provisions of title 5 *shall not apply* to the [FAA's] new personnel management system . . . ." 49 U.S.C. 40122(g)(2) (emphasis added). Moreover, this section goes on to enumerate a number of exceptions to the general rule that title 5 shall not apply – but the sections of title 5 pertaining to compensatory time and credit hours are not listed among them.

Accordingly, there are *no* statutory exceptions to the requirements of section 7(a) of the FLSA contained in the FLSA, title 5, or elsewhere. Thus, the FAA is

reduced to arguing that it was somehow empowered by the Appropriations Act to create its own exceptions to the FLSA.

The slim reed on which the FAA's contention rests is the statement in the Appropriations Act that the new personnel management system (PMS) to be developed shall, "at a minimum, provide greater flexibility in the hiring, training, compensation, and location of personnel." 49 U.S.C. § 40122(g)(1).  This general exhortation of "greater flexibility" includes no language suggesting that the FAA can evade the requirements of the FLSA; rather, it is a simple acknowledgement that the new PMS will no longer be subject to most of title 5's restrictions. Moreover, this vague reference to "greater flexibility" is in contrast to the very specific overtime pay requirements of section 7(a) of the FLSA that apply to the FAA.  It is a fundamental principle of statutory construction that a more recent general statement cannot be used to repeal specific legislation that precedes it. *E.g., HSC-Laundry v. United States*, 450 U.S. 1 (1981) (per curiam); *B&G Contr. Co. v. Dir., OWCP*, 662 F.3d 233, 258-59 (3d Cir. 2011). This is a corollary to the principle that repeals of statutes by implication are strongly disfavored. *Southwest Marine of San Francisco, Inc. v. United States,* 896 F.2d 532, 533 (Fed. Cir. 1990). The FAA's attempt to create its own FLSA exceptions on the basis of statutory language exhorting it to use greater flexibility is an attempt to use the general

language of a statute to trump or repeal the more specific language of another statute – section 7(a) of the FLSA.

Further, every time that Congress has created a statutory exception to one of the requirements of section 7(a), Congress has specifically referenced section 7(a) in doing so. This is true of the compensatory time exception at section 207(o) of the FLSA, of section 5543 of title 5, and of sections 6123 and 6128 of title 5. However, there is no reference whatsoever to the FLSA, let alone section 7(a), anywhere in the text of the Appropriations Act or its legislative history. Thus, the notion that Congress intended to permit the FAA to create such an exception flies in the face of Congress' careful and specific draftsmanship in every other instance where exceptions to the overtime laws were made. It strains credulity to believe that Congress intended to authorize the FAA to create such exceptions on its own, without ever mentioning the FLSA in the Appropriations Act.

The simple truth is that neither the FLSA, title 5, nor the Appropriations Act creates an exception to the overtime requirements of section 7(a) of the FLSA that applies to the Controllers. Thus, the FAA's failure to pay cash overtime at the rate of one and one-half times the Controllers' regular rates of pay violated the FLSA.

No doubt aware of the weakness of its "greater flexibility" argument, the FAA concocts four additional arguments. These arguments should merit little of the Court's attention.

13

The FAA argues that Congress "ratified" the PMS document that the FAA created, and that this "ratification" authorized the FAA to deviate from the overtime requirements of the FLSA. This argument requires the Court to believe 1) Congress somehow has a responsibility to review and evaluate the details of personnel systems that federal agencies create and to alert those agencies if they violate other statutes; 2) an agency can fulfill its obligation for this "review" not through formal mechanisms such as submitting formal documents to the House or Senate committees or members of Congress, but rather by holding an informal meeting at an unspecified location on Capitol Hill of which no record will ever be made in the Congressional Record or elsewhere; and 3) the agency can submit an informal draft document that mentions nothing about its intent to create a new exception to the FLSA's overtime requirements.  To infer from this record Congressional intent to ratify the FAA's attempt to exempt itself from the FLSA would plainly be ludicrous.

The FAA also argues that the statement in the Appropriations Act that the FAA's personnel system should be drafted "notwithstanding the provisions of title 5 or other Federal personnel laws" reflects Congress' permission for the FAA to adopt any provision of title 5 it wishes, including those that create exceptions to section 7(a) of the FLSA.  49 U.S.C. § 40122(g)(1).  This argument ignores the specific language in the section entitled "Applicability of Title 5" stating that the

provisions of title 5 "shall not apply" to the PMS; it also ignores, again, that the FAA is attempting to rely upon language that does not even refer to the FLSA as authorization to evade the very precise requirements of the FLSA.

The FAA next argues that language in the Appropriations Act, at 49 U.S.C. § 40122(a)(1), requiring the FAA to negotiate with the employees' bargaining representatives authorized it to reach agreements with the Controllers' union that violate the overtime pay requirements of the FLSA. This argument not only has no support in the language or context of the Appropriations Act itself, but it is contrary to the longstanding rule that unions and management cannot waive FLSA rights or agree to provisions that violate the FLSA. *E.g., Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981).

Lastly, the FAA argues that it is exempt from section 7(a) of the FLSA under an OPM regulation relating to compensatory time – 5 C.F.R. § 551.531. The obvious flaw in this argument, as the lower court found, is that this regulation implements provisions of title 5, sections 5543 and 6122, that no longer apply to FAA employees after passage of the Appropriations Act. Hence, there is no authority for OPM to authorize compensatory time or other non-cash payment to the Controllers in lieu of FLSA overtime pay.

In short, this is an FLSA case in which the FAA violated the Controllers' FLSA rights by failing to pay them in cash and by failing to pay them at the rate of

one and one-half times their regular rates of pay for working overtime in excess of forty hours a week. The FAA's attempt to arrogate to itself the authority to create exceptions to the FLSA through grandiose and expansive interpretations of the Appropriations Act should be rejected.

## ARGUMENT

## I.    THE TRIAL COURT HAS TUCKER ACT JURISDICTION OVER FLSA CLAIMS AGAINST THE FEDERAL GOVERNMENT

The Tucker Act mandates that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United States founded upon either the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). The Controllers filed this FLSA lawsuit in the Court of Federal Claims, which has original jurisdiction over FLSA actions against the United States. The FAA now contends that the Court of Claims did not have jurisdiction to hear the Controllers' FLSA claims because of the Supreme Court's decision in *United States v. Bormes*, 133 S. Ct. 12 (2012). The FAA has ignored a central holding of *Bormes* and additional Supreme Court precedent holding that, for the Court of Federal Claims to be without jurisdiction to hear the plaintiffs' claims, the statute under which the claims arise must specify the court in which the claims against the Government must be brought. The FLSA does not identify the court in which FLSA cases against the Government may be brought and, not surprisingly, the FAA fails to identify what court it thinks has

16

jurisdiction. Instead, the FAA asks this Court to add language to the FLSA that Congress specifically chose to exclude. After *Bormes*, the Court of Federal Claims remains the court with jurisdiction to hear FLSA cases against the Government.

### A. The FLSA Does Not Withdraw Tucker Act Jurisdiction For Claims Against The Federal Government

The plaintiffs in *Bormes* brought suit against the United States under the Fair Credit Reporting Act ("FCRA"). The Supreme Court held that the Federal Circuit lacked jurisdiction under the Tucker Act to entertain the plaintiffs' claims, finding that the Act was a gap-filling statute meant to supply "the missing ingredient for an action against the United States for the breach of monetary obligations not otherwise judicially enforceable." *Bormes*, 133 S. Ct. at 18. As the Court explained, the "Tucker Act is displaced . . . when a law assertedly imposing monetary liability on the United States contains its own judicial remedy." *Id*. FCRA provides that plaintiffs may pursue their action "in any appropriate ***United States district court***, without regard to the amount in controversy, or in any other court of competent jurisdiction." *Id*. at 15 (citing 15 U.S.C. § 1681p) (emphasis added). Consequently, the Court found that FCRA contains a "self-executing remedial scheme [that] supersedes the gap-filling role of the Tucker Act." *Id.* at 18.

Thus, in *Bormes*, the Supreme Court applied its long-standing test to determine whether Tucker Act jurisdiction is displaced. The first question is

whether the statute at issue imposes monetary liability on the United States such that it waives sovereign immunity. The second question is whether the statute contains its own precise remedial scheme – that is, does the statute provide for jurisdiction in *particular courts* to enforce that liability? *See also United States v. Testan*, 424 U.S. 392, 398 (1976) (recognizing the distinction between laws conferring a substantive right to recover money from the United States and laws endowing a court with jurisdiction to enforce that right).

Since *Bormes*, the Supreme Court has further clarified its position with respect to this second prong, stating that only if the underlying statute at issue "afford[s] . . . a ready avenue to bring [a claim]" will that statute withdraw Tucker Act jurisdiction. *Horne v. Department of Agriculture*, 2013 U.S. LEXIS 4357, **25 (June 10, 2013). In *Horne*, the Court found that the language of the Agricultural Marketing Agreement Act of 1932 ("AMAA"), 7 U.S.C. § 608c(15)(B), which provides that "[t]he District Courts of the United States . . . in any district in which such handler is an inhabitant, or has his principal place of business, are hereby vested with jurisdiction . . . ," withdraws AMAA cases from Tucker Act jurisdiction.

Here, the underlying statute, the FLSA, subjects the government to liability, thus meeting the first prong of the Supreme Court's *Bormes* analysis. In 1974, Congress specifically extended the scope of the FLSA by expanding the definition

of "employee" to include "any individual employed by the [United States]."  29

U.S.C. § 203(e)(2).  This expansion granted federal employees the substantive

right to recover money from the United States as a result of FLSA violations.

The FLSA does not, however, meet the second prong of the *Bormes* test, as

it does not "***precisely*** define the appropriate forum" in which to bring suit.  *Bormes*,

133 S. Ct. at 19 (quoting *Hinck v. United States*, 550 U.S. 501, 507 (2007))

(emphasis added).  Nor does its "structure of review" afford "a ready avenue to

bring [a claim]," as required by *Horne*, 2013 U.S. LEXIS 4357, **25.  Rather, the

FLSA provides that:

> "An action to recover the liability ... may be maintained against any
> employer (including a public agency) ***in any Federal or State court of
> competent jurisdiction*** by any one or more employees for and in
> behalf of himself or themselves and other employees similarly
> situated."  29 U.S.C. § 216(b) (emphasis added).

The FLSA does not "precisely define the appropriate forum" in which suit is to be

brought because it does not define what it means to be a "Federal or State court of

competent jurisdiction."  Indeed, this Court so held as long ago as 1981:

> "29 U.S.C. § 216(b) authorizes Fair Labor Standards Act suits 'in any
> Federal or state court of competent jurisdiction,' ***but the words 'of
> competent jurisdiction' tell us that the words do not stand alone but
> require one to look elsewhere to find out what court, if any, has
> jurisdiction***."  *Zumerling v. Devine*, 769 F.2d 745, 749 (1981)
> (emphasis added).

In *Zumerling*, this Court held that, because the FLSA conferred only the

right to recover money but did not specify the court with jurisdiction of suits to

enforce that right, the Tucker Act was the applicable jurisdictional statute. 769 F.2d at 749. The Court has reaffirmed this holding multiple times. *Saraco v. United States*, 61 F.3d 863, 866 (Fed. Cir. 1995); *El-Sheikh v. United States*, 177 F.3d 1321, 1324 (Fed. Cir. 1999). Its holdings have been unanimously followed by the other federal courts of appeal to consider the issue. *Waters v. Rumsfeld*, 320 F.3d 265 (D.C. Cir. 2003); *Parker v. King*, 935 F.2d 1174 (11th Cir. 1991); *Graham v. Henegar*, 640 F.2d 732 (5th Cir. 1981).

Indeed, the FAA itself is forced to acknowledge the obvious – that the FLSA "does not specifically name the district court or any other particular court as the appropriate forum for suits." FAA Brief, 31. However, the FAA asks this Court to infer that Congress *actually* intended the appropriate forum to be the United States district courts because FLSA actions "fit[] naturally" within their general jurisdiction. FAA Brief, 32. This would require the Court to add language to the FLSA that Congress specifically chose not to incorporate.

Congress knows how to withdraw Tucker Act jurisdiction when it chooses, and has demonstrated its ability to do so on numerous occasions. For example, the Age Discrimination in Employment Act (ADEA) provides that "any person aggrieved may bring a civil action in any ***Federal district court*** of competent jurisdiction." 29 U.S.C. § 633a(c) (emphasis added). *See also Perry v. United States*, 2013 U.S. Claims LEXIS 593, *9 (June 4, 2013) (finding that the Court of

20

Claims lacked jurisdiction because, *inter alia*, the Privacy Act expressly provides

that "district courts of the United States shall have jurisdiction . . . .").  The

Supreme Court has held that courts should not add an "absent word" to a statute, as

it would result "not [in] construction of [the] statute, but, in effect, an enlargement

of it by the court, so that what was omitted ... may be included within its scope."

*Lamie v. United States*, 540 U.S. 526, 537 (2004) (citations omitted).  To add the

words 'district courts' to the FLSA, which states ***only*** "any Federal or State court of

competent jurisdiction," would fundamentally alter the language of the statute that

Congress drafted.

The FLSA has been amended on numerous occasions since 1966,[5] including

after this Court's 1981 *Zumerling* decision. At no point has Congress amended §

216(b) of the FLSA to "precisely define the appropriate forum" in which suit is to

be brought.  Congress is presumed to be aware of existing case law interpreting

legislation when it amends that legislation.  *See*, *e.g*., *Miles v. Apex Marine Corp*.,

498 U.S. 19, 32 (1990).  Thus, it can be assumed that if Congress disagreed with

this Court's decision in *Zumerling*, or the other court of appeals decisions following

---

[5] Section 216 of the FLSA has been amended six times since 1966, and four times
since 1981.  29 U.S.C. § 216, History; Ancillary Laws and Directives (*citing* April
8, 1974, P.L. 93-259; November 1, 1977, P.L. 95-151; November 17, 1989, P.L.
101-157; November 5, 1990, P.L. 101-508; August 6, 1996, P.L. 104-174; May 21,
2008, P.L. 110-233).

that decision, it would have amended § 216(b) to withdraw Tucker Act jurisdiction.

Because the FLSA does not "***precisely*** define the appropriate forum" in which to bring suit, Tucker Act jurisdiction is not withdrawn or displaced under the Court's decision in *Bormes,* and the Court of Federal Claims was the appropriate court in which to bring this FLSA suit.[6]

---

[6] If this Court should find that the Court of Federal Claims lacked jurisdiction, the Controllers respectfully request that the Court, in the interest of justice, transfer their case to the District Court for the District of Columbia pursuant to 28 U.S.C. § 1631 ("[w]henever a civil action is filed in a court  . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed . . ."). Venue in that court would be proper under 28 U.S.C. § 1391(e).

Title 28 U.S.C. § 610 defines "court" as including, *inter alia*, the courts of appeals and district courts, as well as the United States Court of Federal Claims. Section 1631's use of the phrase "shall . . . transfer" "persuasively indicates that transfer, rather than dismissal, is the option of choice." *Edelmann v. United States*, 76 Fed. Cl. 376 (2007) (quoting *Matthews v. United States*, 72 Fed. Cl. 274, 280 n.9 (2006) (citations omitted)).  If the "dismissal of a claim would result in the claim being time-barred when it is re-filed in a court of proper jurisdiction, then justice requires transfer." *APG, L.P. v. United States*, 41 Fed. Cl. 607, 609 (1998). Thus, here, because the Controllers' claims would be time-barred if re-filed in district court, "justice requires transfer" and the transferee court must treat the case as though it was filed in that court on the date it was first filed in the Court of Federal Claims.

## II.   THE FAA REFORM LEGISLATION DOES NOT PERMIT THE FAA TO DEPRIVE THE CONTROLLERS OF THE OVERTIME PROTECTIONS OF THE FLSA

### A.   Section 7(a) of the FLSA Requires That the Controllers Be Paid Overtime in Cash and at One and One-Half Times Their Regular Rates

This is a Fair Labor Standards Act case brought under section 7(a) to recover unpaid overtime compensation.  Section 7(a) mandates that overtime be paid in cash "at a rate not less than one and one-half times the regular rate at which [the employees are] employed." 29 U.S.C. § 207(a).  The Court of Federal Claims ruled that three separate FAA practices violated section 7(a) of the FLSA: 1) the FAA's use of compensatory time in lieu of cash to compensate the Controllers for overtime work; (2) the FAA's use of "credit hours" in lieu of cash as compensation for overtime work; and (3) the FAA's practice of providing compensatory time and credit hours at straight-time, hour-for-hour rates for each overtime hour worked rather than at the rate of one and one-half times the Controllers' regular rates of pay.  As the FAA acknowledges, the Controllers are covered by the FLSA and, therefore, the FAA must comply with the FLSA in paying them.[7]  Thus, the sole

---

[7] The FAA acknowledges (Brief, 6) that the Controllers are covered by the FLSA after the enactment of the Appropriations Act of 1996. ("There is no dispute that plaintiffs are covered by the FLSA.")  *See also* Joint Stipulation of Facts, ¶ 8 (JA 88); Statement of FAA Counsel at oral argument on August 19, 2008, that "I want to make it very clear . . . we are not arguing that the Fair Labor Standards Act does not apply to plaintiffs. . . .  We're not arguing that the FAA is somehow authorized

issue on appeal is whether the FAA's pay practices regarding overtime violated

section 7(a) of the FLSA.

**1.    The FAA's Policy of Providing Hour-for-Hour
Compensatory Time and Credit Hours for
Overtime Work Violates the FLSA**

The FLSA is the nation's law that sets forth minimal labor standards and

protections for the nation's workers in all sectors of the economy – the private

sector, federal sector and state and local governments – by setting forth statutory

requirements with respect to child labor, the minimum wage, and overtime pay.  29

U.S.C. §§ 201 *et seq.  See, e.g., Shahriar v. Smith & Wollensky Restaurant Group,

Inc.* 659 F.3d 234, 243 (2d Cir. 2011)*; Alvarez Perez v. Sanford-Orlando Kennel

Club, Inc.* 515 F.3d 1150, 1156 (11th Cir. 2008).  In 1974, Congress extended the

application of the FLSA to the federal government and its employees. 29 U.S.C. §

203(e)(2) (defining individuals covered by the FLSA to include "[a]ny individual

employed by the Government of the United States."). It is uncontroverted that the

Controllers are employed by the Government of the United States, that they are

covered by the FLSA, and that the FAA must comply with the requirements of the

FLSA with respect to the payment of overtime to the Controllers.  JA 10.

Section 7(a) of the FLSA mandates payment of overtime: (1) in cash; and

(2) at the rate of one and one-half times an employee's regular rate of pay for each

---

or delegated authority by Congress to implement the Fair Labor Standards Act as
to FAA employees." JA 1090.

overtime hour worked.  29 U.S.C. § 207(a).  The courts and DOL have long

emphasized that, absent an express statutory exception, "the overtime pay

standards of the Act require payment to the employee of the prescribed wages in

cash."  1984 DOLWH LEXIS 14 (May 8, 1984) (JA 1096).  *See also Biggs v.*

*Wilson*, 1 F.3d 1537, 1543 (9th Cir. 1993) ("[O]vertime payments must be made in

cash or negotiable instruments on the employee's regular payday."); *Brennan v.*

*Heard*, 491 F.2d 4 (5th Cir. 1974) (set-offs . . . deprive the employee of the 'cash in

hand' contemplated by the Act");  1998 DOLWH LEXIS 89 (Nov. 19, 1998)

("compensatory time off in lieu of paid overtime is not currently allowed by

employers other than State and local government employees.") (JA 1101).  Indeed,

the DOL regulations explicitly state that 'payments of the prescribed wages,

including overtime compensation, [must be made] in cash or negotiable instrument

payable at par."  29 C.F.R. § 531.27(a).  Accordingly, absent existence of an

express statutory exception, employers, including the federal government, who use

compensatory time, credit hours with no cash value, script or any other non-cash

device in lieu of cash as payment for working hours in excess of forty hours a

week violate the requirements of section 7(a).

Similarly, section 7(a) expressly requires that overtime be paid at the rate of

"one and one-half times" the employees' regular rates of pay.  Absent an express

exemption to this requirement, employers who pay straight time in lieu of overtime

at the rate of one and one-half times an employee's regular rate of pay plainly

violate the overtime requirements of the Act.  *See, e.g.,* 29 C.F.R. §§ 778.107-109;

5 C.F.R. §551.501(a).

> **2.      None of the Statutory Exceptions in the FLSA to the Requirement That Monetary Compensation Be Paid for Overtime or That It Be Paid at One and One-Half Times Employees' Regular Rates of Pay Apply to the Controllers**

Exceptions to the overtime requirements of section 7(a) are narrowly

construed against the employer claiming them.  *See, e.g.*, *Corning Glass Works v.*

*Brennan*, 417 U.S. 188 (1974); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392

(1960).  Employers bear the burden of demonstrating that a particular employee, or

category of employees, do not fall within the ambit of section 7(a) by

demonstrating that a specific statutory exemption applies.  *E.g., Gieg v. DRR, Inc.*,

407 F.3d 1038, 1045 (9th Cir. 2005) (employer bears burden of proving employees

fall under 29 U.S.C. §207(i) partial overtime exception for commissioned sales

employees); *Vela v. City of Houston*, 216 F.3d 659, 667 (5th Cir. 2001) (employer

bears burden of proving paramedics are not entitled to overtime under §7(a)).

The FLSA contains specific exceptions to the FLSA's requirement that

monetary compensation be paid for work hours in excess of 40 hours in a week.

For example, section 207 sets forth exemptions for: commissioned sales employees

(§ 207(i)); firefighters and police (§ 207(k)); employment necessitating irregular hours (§ 207(f)); and employees receiving remedial education (§ 207(q)). [8]

Sections 203(m) and 207(o) are the only exceptions contained in the FLSA to the statute's prohibition against compensation other than in the form of monetary compensation: § 203(m) permits an employer to count towards its FLSA obligations the reasonable cost or fair value of board, lodging, or other facilities furnished to employees (29 U.S.C. § 203(m)); and § 207(o) permits *state and local governments* to provide compensatory time for overtime compensation at the rate of one and one-half times each hour of overtime worked, provided that certain other requirements are met.  29 U.S.C. § 207(o)(1)-(5).  It is well-established that § 207(o) is an *exception* to the FLSA's requirement that monetary overtime compensation be paid for overtime work.  *Moreau v. Klevenhagen*, 508 U.S. 22, 23 (1993).

Notably, even though Congress amended the FLSA to permit payment in compensatory time for state and municipal employees under section 7(o), 29 U.S.C. § 207(o), Congress refrained from doing so for federal[9] or private sector employees.  Although the FAA argued in the lower court that it could somehow

---

[8] These partial exemptions are in addition to the full exemptions from the requirements to pay overtime compensation set forth under 29 U.S.C. § 213(a). Those exemptions are not at issue here.

[9] *Doe v. United States,* 74 Fed Cl. 592, 597 (2007) (the FLSA "contains no provision allowing comp time in lieu of overtime compensation for federal employees").

graft on the compensatory time exception for state and local governments under section 7(o) to its application of the FLSA to the Controllers, it appears now to have abandoned that argument.[10]

Accordingly, "[e]ven though [the] FLSA contains numerous exceptions, [there is not] one that explicitly applies to . . . the FAA. . . ." *Fed. Air Marshals v. United States*, 74 Fed Cl. 484, 486 (2006).

>    **3.    The Statutory Authority That Permits Payment of Compensatory Time in Lieu of Cash for Certain Federal Employees Also Does Not Apply to the Controllers**

Two sections of title 5 expressly permit federal agencies to provide straight-time compensatory time in lieu of cash compensation to certain federal employees. Section 5543 explicitly states that employees subject to its provisions may receive compensatory time "instead of payment under section 5542 or section 7 of the Fair Labor Standards Act of 1938 for an equal amount of time spent in irregular or occasional work." 5 U.S.C. § 5543.  Federal agencies to which title 5 applies may also provide a type of compensatory time known as "credit hours" at a straight-time rate. However, they may do so only for employees who are covered by the

---

[10] This argument was soundly rejected by the lower court. JA 12.  The exception for compensatory time is expressly limited to "state and local governments," which obviously excludes the federal government. *See Doe v. United States*, 513 F.3d 1348, 1358 (Fed. Cir. 2008).

Flexible and Compressed Work Schedules Act ("CWSA"), 5 U.S.C. §§ 6120-6133.

Section 6123(a) states:

> "For purposes of determining compensation for overtime hours in the case of an employee participating in a program under section 6122 of this title [flexible schedules]:

> "(1) the head of an agency may, on the request of the employee, grant the employee compensatory time off in lieu of payment for such overtime hours . . . notwithstanding the provisions of sections . . .section 7 of the Fair Labor Standards Act (29 U.S.C. [§] 207), or any other provision of law."

And Section 6128(a) of the CWSA provides in pertinent part:

> "The provisions of . . . , section 7 of the Fair Labor Standards Act (29 U.S.C. 207), or any other law, which relate to premium pay for overtime work, shall not apply to the hours which constitute a compressed schedule." 5 U.S.C. §§ 6128(a).[11]

However, Congress expressly stated in the Appropriations Act that "the provisions of title 5 shall not apply" to employees, such as the Controllers, who are covered by the FAA PMS. 49 U.S.C. § 40122(g)(2). There is no ambiguity in this language. It is therefore axiomatic that title 5's provisions permitting

---

[11] For purposes of the CWSA, overtime is defined as hours in excess of 40 hours per week, but does not include as part of this definition "credit hours." 5 U.S.C. § 6121(6). Thus, solely for purposes of CWSA nomenclature, "credit hours" are not considered "overtime." 5 U.S.C. §§ 6121(4), (6); § 6123(b). Nonetheless, "credit hours" are, as a practical matter, hours an employee *actually works* in excess of 40 hours per week. The FLSA requires payment for all hours worked during workweeks where the employee works in excess of 40 hours. *E.g., IBP v. Alvarez*, 546 U.S. 21, 40-41 (2005); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 370-72 (3rd Cir. 2007). As such, the name assigned by the FAA to these hours worked in excess of 40 hours in a workweek is irrelevant to the issue whether monetary overtime compensation must be paid in accordance with the FLSA.

compensatory time in lieu of cash as compensation for overtime work do not apply to the Controllers. *See Dodd v. United States*, 545 U.S. 353, 357 (2005) (Congress "says in a statute what it means and means in a statute what it says."); *Gonzalez v. Dep't of Transp.*, 551 F.3d 1372, 1374 (Fed. Cir. 2009) ("When we find the terms of a statute unambiguous, judicial inquiry should be complete except in rare and exceptional circumstances").

Significantly, title 5 is the *sole* source of statutory authority for a federal agency to provide compensatory time in lieu of monetary compensation under section 7 and the *sole* source of authority for a federal agency to provide straight time in lieu of time and one-half as required under section 7(a) of the FLSA. Thus, because title 5 does not apply to the FAA, the Controllers are not subject to *any* exemption from the requirements of section 7(a).

### B. The FAA Reform Legislation Does Not Permit the FAA to Compensate Employees With Compensatory Time or Credit Hours For FLSA Overtime Hours

#### 1. Under Well-Established Rules of Statutory Construction, the Appropriations Act Does Not Grant the FAA the "Flexibility" to Design and Implement a PMS That Violates the FLSA

In an effort to get around the clear statutory language in 49 U.S.C. § 40122(g)(2) that "[t]he provisions of title 5 *shall not apply*" to the new PMS, the FAA fixes on the statement in § 40122(g)(1) that the PMS "shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of

30

personnel."  The FAA maintains that this language –  "greater flexibility" – was intended to impose a "mandate" of virtually unlimited freedom for the FAA to craft a personnel system subject to "almost no limitations, requirements, or other parameters" including the right to design a PMS that violates section 7(a) of the FLSA.  FAA Brief, 32, 34.

The FAA ascribes too much meaning to the term "greater flexibility."  The phrase "greater flexibility" is non-specific and vague; the words themselves tell us nothing about precisely what slate of personnel reforms Congress anticipated.  The phrase is not further defined in the statute, although it can be assumed that greater flexibility was expected to result from the FAA's freedom to disregard most of title 5, including requirements as to pay, leave, retirement, and other benefits.  Nevertheless, the FAA argues that Congress must have intended the language to have the *specific* meaning that the FAA was free to use compensatory time and credit hours in lieu of FLSA overtime pay because these are "flexible" practices, because the FAA employed these types of practices before the reform legislation in 1995, and because this would save the FAA money.  FAA Brief, 35-40.

Distilled to its essence, the FAA is arguing that a general statement regarding "greater flexibility" with regard to a host of issues trumps the more specific, express statutory requirements of section 7(a).  This argument directly contradicts a basic principle of statutory construction: "specific terms [of a statute]

31

prevail over the general in the same or another statute which might otherwise be controlling." *B&G Contr. Co. v. Dir., OWCP*, 662 F.3d 233, 258-59 (3d Cir. 2011). *See, e.g., HSC-Laundry v. United States*, 450 U.S. 1 (1981) (per curiam); *United States v. Johnson*, 632 F.3d 912, 924 (5th Cir. 2011). Indeed, courts have long rejected arguments such as that offered by the FAA here, that the general language of a later-enacted statute – the Appropriations Act's general statement regarding "flexibility" – somehow overrides the requirements of an earlier, more specific statute that also applies to the parties – section 7(a) of the FLSA. *See, e.g., D. Ginsberg & Sons v. Popkin*, 385 U.S. 204, 208 (1930); *Johnson,* 632 F.3d at 92; *Southwest Marine of San Francisco, Inc. v. United States*, 896 F.2d 532, 533 (Fed. Cir. 1990). As the Third Circuit recently explained, "Statutory Construction 101 contains the canon that a specific provision will prevail over a general one." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 328 (3d Cir. 2010). *See* N. Singer & J. Singer, 2A *Sutherland Statutes and Statutory Construction* § 46:5 ("Where there is inescapable conflict between general and specific terms or provisions of a statute, the specific will prevail.").

In *Farmer v. Employment Sec. Comm'n*, 4 F.3d 1274 (1993), the Fourth Circuit explained the rationale for this statutory canon, "It is a basic principle of statutory construction that when two statutes are in conflict, a specific statute closely applicable to the substance of the controversy at hand controls over a more

generalized provision. Deploying this principle the Supreme Court has held that the narrower and earlier of conflicting statutes should prevail in a contest for control of a particular controversy:

> '[A] statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment. The reason and philosophy of the rule is that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter such a construction, in order that its words shall have any meaning at all.'" *Id.* at 1284 (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)).

As the Federal Circuit has repeatedly cautioned, another cardinal rule of statutory construction is that repeals by implication are not favored. *Southwest Marine,* 896 F.2d at 533; *United States v. United Cont'l Tuna*, 425 U.S. 164, 168 (1976).

Under these principles, it is clear that the Appropriation Act's general reference to "greater flexibility" cannot override the specific terms of section 7(a) of the FLSA.  Similarly, that general language cannot override the specific language in the Appropriations Act itself, which clearly states that title 5 "shall not apply" to the FAA's new PMS:

> **(g) Personnel Management System**
>
> . . .
>
> **(2) Applicability of title 5.** – The provisions of title 5 shall not apply to the new personnel management system developed and implemented [by the FAA] . . . with the exception of –
>
> **(A)** section 2302(b) [whistleblower protections];
> . . .
>
> **(H)** sections 1204, 1211-1218, and 7701-7703, [the Merit Systems Protection Board]." 49 U.S.C. § 40122(g)(2).

As Chief Judge Hewitt noted, this long list of enumerated provisions of title 5 that Congress stated *would* apply to the FAA does *not* include §§§ 5543 and 6121-6128, the provisions creating exceptions for certain federal employees from the overtime provisions of section 7(a) of the FLSA and authorizing the use of compensatory time and credit hours in lieu of time-and-a-half cash compensation. JA 13.

It is neither reasonable nor consistent with principles of statutory interpretation to conclude that a general exhortation of "greater flexibility" was meant to contradict this clear and specific language. Indeed, the ancient maxim *expressio unius est exclusio alterius* (mention of one impliedly excludes others) requires a rejection of the FAA's argument. *See, e.g., Lewis v. Alexander*, 685 F.3d 325, 347 (3d Cir. 2012) (where Congress sets forth a specific list, items not on the list are presumed excluded); *Gonzalez*, 551 F.3d at 1375-77 (rejecting an

attempt to graft title 5's Back Pay Act onto the Appropriations Act, stating "[t]his court must honor... the principle *expressio unius est exclusio alterius*. Without express language in § 40122(g) that excludes 5 U.S.C. § 5596, the Back Pay Act, from the general inapplicability of Title 5, the Board is correct to deny that remedy to FAA employees").

The Supreme Court has cautioned that "[w]here Congress explicitly enumerates certain exceptions . . . additional exceptions are not to be implied." *United States v. Smith*, 499 U.S. 160, 167 (1991).  This is especially true here given that, in every other instance where Congress has created an exception to the overtime requirements of section 7 of the FLSA, it has done so expressly.  For example, 5 U.S.C. § 5543 states that employees may receive compensatory time "instead of payment ... under section 7 of the [FLSA]."  Similarly, 5 U.S.C. § 6123(a) permits compensatory time "notwithstanding section 7 of the [FLSA]," and 5 U.S.C. § 6128 provides that "[t]he provisions of ... section 7 of the [FLSA] shall not apply to the hours which constitute a compressed schedule."  Further, section 7(o) of the FLSA provides that "Employees of a public agency which is a State ... may receive, . . .  in lieu of overtime compensation, compensatory time off" and "overtime compensation" is defined as "compensation required by subsection (a) [of section 7]."  29 U.S.C. § 207(o)(1),(7)(A).  Thus, in every instance that Congress has created an exception to the FLSA's requirement that

overtime compensation be paid in cash at a rate no less than one and one-half times the regular rate, Congress has expressly referenced section 7.

In the Appropriations Act, Congress not only chose ***not*** to expressly state that it was creating an exception to the FLSA – indeed it did not reference the FLSA at all, either in the Act itself or the legislative history – but Congress actually ***removed*** the application of those provisions of title 5 that provide for exceptions to section 7 of the FLSA.  Yet the FAA asks this Court to infer that Congress' general statement of "flexibility" permits it to create its own exception waiving the plain language of section 7.  As this Court has noted, "The Supreme Court has cautioned that "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text." *Gonzalez*, 551 F.3d at 1375, *citing Lane v. Pena*, 518 U.S. 187, 192 (1996).  "When composing the FLSA, Congress has diligently included specific express exemptions within the statute itself. . . If Congress had intended [the Controllers] to be exempted from the overtime provisions of the FLSA, it could - and would - have expressly stated that intention." *Fed. Air Marshals v. United States,* 84 Fed. Cl. 585, 591 (2008).

### 2. The Legislative History Does Not Grant the FAA the "Flexibility" to Design and Implement a PMS That Violates the FLSA

The FAA spends little time discussing the legislative history of the Appropriations Act given that it, like the text of the statute, provides no support for its position. As the trial court stated, "There is an absence in either the text of the legislation or in the legislative history of § 106(*l*)(1) of a clearly discernible indication of congressional intent to abrogate the protections of the FLSA." JA 18. The FAA identifies no language in any Senate or House report or proposed bill that even suggests such an intention. Indeed, statements in the legislative history revealing an intention that the FAA take measures to attract employees and enhance morale argue against the FAA's position. For example, an April 1996 Senate Report stated: "Although the new system would be exempt from many Federal personnel laws and regulations, certain key Federal laws protecting workers' rights and benefits would still apply to the FAA and its employees, including retirement, health and life insurance benefits, and veteran preference." S. Rep. No. 104-251, at 29 (1996). As the trial court observed, "[i]t would be anomalous to conclude that Congress intended to eliminate the protections of the FLSA at the same time it was trying to attract employees and increase morale." JA 20.

In fact, the legislative history suggests that Congress contemplated that the FAA would operate more like a private sector employer – that is, an employer subject to the FLSA:

> "The Committee envisions FAA setting up systems that will allow it to operate in a more efficient and business-like manner.  It should have the flexibility to hire and fire as in the private sector, to provide incentives for personnel to move to where they are most needed, and to provide them with the equipment they need to do the job.  There should no longer be a need to separate statutory pay differentials that stand out as a target for budget cutters.  Rather FAA should be able to pay employees in accordance with the job they do and the cost of living in the area that they do it."  H.R. Rep. No. 104-475, at 31.

If Congress hoped to see improvements in employee recruitment and morale, and anticipated that the FAA would operate like a private sector employer, there is no reason to believe Congress intended the FAA to be free to ignore the base-line requirements of the FLSA.

Nor does the legislative history support the FAA's interpretation of the "shall not apply" language of § 40122(g).  A number of proposals were made in 1995 and 1996 relating to reform of the FAA, its operations, and its personnel and procurement practices.  At least one of these, discussed in S. Rep. 104-251, proposed language that, instead of stating that the majority of title 5's provisions "shall not apply" to the FAA's PMS, instead simply stated that the statute "shall not result in the exemption of employees of the Administration from any of the following provisions of title 5," and listed the provisions that were to apply (which

largely tracked those specified in § 40122(g)(2)). Yet this language was rejected in favor of the language ultimately enacted, which states that most of title 5 "shall not apply" and lists the exceptions to that rule.[12]

Further guidance is offered by Congress's rejection of proposed bills that would have required that the FAA compensate employees "in accordance with title 5." See S. Rep. 104-521; S. Rep. 104-333. The language ultimately enacted in October 1996 exempted the FAA from title 5's compensation provisions, stating instead only that the FAA "shall [not] be bound by any requirement to establish such compensation or benefits at particular levels," 49 U.S.C. § 106(*l*), and leaving intact the 1995 Act's language stating that title 5 "shall not apply." The FAA argues that this history somehow "does not demonstrate any Congressional intention to preclude the FAA from adopting title 5 compensation provisions." FAA Brief, 54. Regardless, it certainly does not suggest any intention to permit the FAA to avail itself of any title 5 exemptions from the FLSA's overtime requirements.

---

[12] The FAA contends that this Senate Report, which was printed on April 10, 1996 – roughly five months after the bill later codified at § 40122(g)(2) was enacted – does not constitute legislative history but rather reflects Congress's "view of what it had previously enacted." FAA Brief, 47 n.3, 52-54. This is nonsense. Whether S. Rep. 104-251 was published before or after the November 1995 Appropriations Act, the Senate bill discussed in that report was never enacted as law and the language that *was* enacted as part of the 1995 legislation was never amended in any way.

3.    **Neither the Text of the Appropriations Act Nor the Case Law Supports the FAA's Interpretation of "Notwithstanding the Provisions of Title 5 and Other Federal Personnel Laws"**

The FAA's final argument from the statutory language is that § 40122(g)(1) permits the FAA to "adopt" any provision of title 5 because the statute says that the new PMS is to be developed and implemented "notwithstanding the provisions of title 5 and other Federal personnel laws." FAA Brief, 48-50. According to the FAA, this means that title 5 was not to affect the PMS "one way or another." *Id.* at 49. It is unclear how such an interpretation supports the FAA position that it was free to make use of the § 5543 and § 6122 exemptions from the FLSA. As this Court has explained, such "notwithstanding" language indicates that title 5 is "displaced" by the FAA reform legislation; in other words, it has no continued applicability. *Shoshone Indian Tribe v. United States,* 364 F.3d 1339, 1346 (Fed. Cir. 2004). That being the case, the FAA is not exempted under title 5 from the overtime provisions of the FLSA, and the FAA is still left arguing it is somehow empowered to create its own exemptions from the FLSA that do not appear in any statute.[13]

---

[13] The government never clearly argues that "notwithstanding . . . Federal personnel laws" means notwithstanding the FLSA. It does argue, however, that the trial court's conclusion to the contrary renders that language "superfluous," citing *Whalen v. United States*, 93 Fed. Cl. 579 (2010). FAA Brief, 48-49. This argument is inconsistent with the FAA's own admission that "*[t]here is no dispute that plaintiffs are covered by the FLSA*." FAA Brief, 6 (emphasis added). *See*

### 4. The Case Law Does Not Grant the FAA Discretion to Design a PMS That Violates the FLSA or Other Applicable Law

The FAA also attempts to find support for its position in two of this Court's previous cases addressing the interplay between § 40122(g)(2) and title 5. As the trial court concluded, neither of those cases is apposite.

In *Brodowy v. United States*, 482 F.3d 1370 (Fed Cir. 2007), FAA employees brought suit, claiming that they had not been paid in accordance with the pay schedule that the FAA adopted after enactment of the Appropriations Act. That pay schedule was modeled on the GS pay schedule in title 5, which the FAA Administrator had "adopted" on an interim basis in 1996 by administrative order. This Court described the FAA's administrative order as "specifically authorized by statute and . . . not in conflict with the GS system compensation provisions *or any other law*." *Id.* at 1375 (emphasis added). Thus, the FAA's choice to model its pay schedule on title 5 was permissible – despite the "shall not apply" language of § 40122(g)(2) – because implementation of the pay schedule did not conflict with the FLSA or any other applicable law.

---

*also* JA 88, 93. In any event, the FLSA is not a "Federal personnel law." *See Fed. Air Marshals*, 84 Fed. Cl. at 590 ("The FLSA is not a Federal personnel law; rather, the FLSA is a universally applicable employment law and the FAA's [PMS] is subject to its provisions."); *Fed. Air Marshals,* 74 Fed. Cl. at 487 (same). *Whalen*, which concluded otherwise, was wrongly decided.

The FAA's attempt to find support in this Court's decision in *Gonzalez v. Dep't of Transp*., 551 F.3d 1372 (Fed. Cir. 2009), is equally flawed as *Gonzalez* supports the Controllers' position that the sections of title 5 that provide exceptions to the FLSA do not apply to the FAA. In *Gonzalez*, an FAA employee petitioned the Merit Systems Protection Board ("MSPB") to enforce a prior judgment in his favor that included an award of back pay. The MSPB refused, concluding that its jurisdiction was limited to back pay awards under the Back Pay Act. As it noted, § 40122(g)(2) did not list the provision of title 5 codifying the Back Pay Act among the exceptions in the Appropriations Act to the admonition that title 5 "shall not apply." Consequently, the Back Pay Act did not apply to FAA employees and could not provide the MSPB with jurisdiction over back pay awards. As it stated, "this court cannot read between the lines to imply an exemption for the Back Pay Act from the ["shall not apply"] text of § 40122(g)." *Id.* at 1376.

The FAA points out that the court in *Gonzalez* acknowledges that the FAA implemented its *own* back pay provisions in its PMS. Id. ("back pay awards for FAA employees must come under the 'new personnel management system,' not from MSPB awards"). Thus, the FAA argues, "*Gonzalez* implicitly recognized the FAA's authority to adopt requirements contained in Title 5 provisions not listed in section 40122(g)(2) such as the BPA." FAA Brief, 46. However, what the FAA fails to point out is that, as in *Brodowy*, the FAA's implementation of a back pay

policy modeled in part on the title 5 Back Pay Act provision *does not conflict with the specific requirements of any other applicable law*.

Thus, neither *Brodowy* nor *Gonzalez* holds that the FAA may borrow provisions of title 5, or adopt any other personnel or compensation practices, *where doing so would violate the FLSA or other applicable law*.

Moreover, even where the implementation of practices embodied in title 5 provisions does not violate the FLSA or other applicable law, the FAA cannot *literally* "adopt" such provisions because, unless they are included among the title 5 provisions enumerated in § 40122(g)(2), those provisions simply do not "apply" to the FAA's PMS.  Thus, while the FAA may borrow ideas from such provisions in drafting its own personnel policies, they no longer have the force of law:  it is neither *bound* by them under title 5 nor can they operate to *exempt* the FAA from the FLSA or any other applicable law.  The FAA has essentially conceded as much where it claims to have "adopted" title 5 practices such as awarding back pay or providing credit hours with no cash value – but has not considered itself *bound* by requirements of the adopted provisions that it found inconvenient or undesirable. For example, while the FAA may permit back pay awards, they do not provide interest on such awards, as required by 5 U.S.C. § 5596(b)(2).

**5.    Congress Did Not Implicitly Approve of, or "Ratify," the FAA's Interpretation of the Statute By Referring to the PMS in Section 40122(a) or (g)**

Relying on Mr. Whitlow's testimony, the FAA argues that Congress implicitly "approved" of the March 28, 1996 PMS document when it "referenced" that document in the October 1996 Improvement Act later codified at 49 U.S.C. § 40122(a)(1).  According to the FAA, that document supposedly notified Congress of the FAA's belief that it was free to "adopt the substance of any title 5 provision it wished." *Id.*  This preposterous attempt to blame Congress for the FAA's failure to comply with the FLSA should be rejected.

### a)    The Legislative History

The FAA contends that, because Congress "re-enacted" the language of section 347 from the Appropriations Act in the 2000 Ford Act, and because Congress was "well aware" of the FAA's "widely known" interpretation of that language, the Ford Act constituted "legislative ratification" of the FAA's interpretation.  This argument is based on a ludicrous distortion of both the legislative history and the evidence.

As an initial matter, the cases the FAA cites provide no support for its position.  The cases it cites are entirely inapposite.  Some involve situations in which an agency has been granted broad authority to administer a statute and done so through notice-and-comment procedures, and publishing formal regulations in

the Federal Register and the Code of Federal Regulations that express its interpretation of the statute. *See*, *e.g.*, *CFTC v. Schor*, 478 U.S. 833 (1986) (published CFTC regulation). Others involve situations in which the proper interpretation of language in a statute has been fully litigated and addressed in a Supreme Court or Court of Appeals. *E.g.*, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010); *Forest Grove School Dist. v. T.A.,* 557 U.S. 230 (2009). Perhaps most far-fetched is the FAA's reliance upon this Court's decision in *Disabled Am. Veterans v. Sec'y of V.A.*, 419 F.3d 1317 (Fed. Cir. 2005), where the Court approved an agency practice as authorized by the statute where the statute "was enacted against the background of a long-standing agency practice" and Congress "*explicitly* recognized and endorsed that practice in both the legislative history and the statutory text." *Id.* at 1322, 1323 (emphasis added).

Obviously, these cases have no bearing here. Congress's mere acknowledgement in the Appropriations Act and the Ford Act that the FAA was to implement, or had in the past implemented, a new PMS on a certain date does not constitute any "explicit recogni[tion] or endorse[ment]" of any of the specific details incorporated into that system. There is no reason to believe that the FAA's internal documents and the policies they describe are familiar to anyone outside the FAA, much less to Congress. Indeed, it would be remarkable if anyone outside the

agency were familiar with the FAA's personnel policies regarding compensatory time and credit hours, particularly where they are described so obliquely or not at all in the PMS document itself.

The FAA's description of the statutes, the legislative history, and the evidence is no more accurate than its characterization of the applicable law. Contrary to the FAA's claim, the 1995 Appropriations Act simply instructed the FAA to develop a new PMS; it did *not* instruct the FAA to submit its new PMS to Congress for review or approval.[14]  Nor did the 1996 Improvement Act refer to the March 28, 1996 PMS document, as the FAA suggests; rather, it referred to "the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996."  49 U.S.C. § 40122(a)(1). While this statement acknowledges generally that a new PMS was implemented on that date, it does not refer to the written plan signed by Administrator Hinson on March 28, 1996, much less to any content of that document.

Despite the FAA's efforts to paint a picture of Congressional involvement in the development of the PMS, the FAA failed to produce *any* convincing evidence

---

[14] This was a deliberate choice by Congress.  Significantly, Congress rejected proposed alternative bills that would have provided for Congressional oversight of FAA's personnel reform. For example, a 1996 Senate Report regarding Senate Bill 1239 explicitly recognized that Congressional review was not part of the 1995 enactment. 104 S. Rpt. 251 ("Title II of this bill builds upon those provisions [of the 1995 enactment] in many ways, including a required review of the new system by Congress.").  Senate Bill 1239 did not become law.

at trial of such collaboration, or even of a cursory review by one Congressperson of the Agency's PMS. Rather, Mr. Whitlow testified that, in early April 1996, he presented the document in a meeting on Capital Hill. JA 558. Yet he was unable to tell the court who was in attendance at this meeting, who received copies of the document, when or where this meeting took place, or what was discussed. JA 558-60. Mr. Whitlow confirmed that he had done no analysis at this time (or later) regarding how the FAA's intentions with respect to compensatory time or credit hour policies might "interface" with the requirements of the FLSA. JA 576-77. There is *no* evidence that the PMS document was formally submitted to Congress, *no* evidence that it was sent to – or received by – Congressional offices or senators or representatives, *no* evidence that it was submitted to – or received by – any Senate or House committees, and *no* evidence that there was any formal discussion or testimony before Congress about the PMS – much less the FAA's intended policies regarding compensatory time and credit hours. On this record, Mr. Whitlow's assumption that "[i]f someone disagreed with me [about the FAA's ability to adopt any provisions of title 5 it chose to], particularly Congress, they would let me know" is ridiculous.

There simply is no basis to believe Congress had any notion how the FAA meant to implement the 1995 Appropriations Act with respect to compensatory time and credit hour practices, and certainly not that it intended to do so in a

manner that violated section 7(a) of the FLSA.  This should not be surprising, as Congress is not generally in the business of overseeing federal agencies' personnel practices.

### b)    The PMS Document

The March 28, 1996 FAA PMS document also provides no support for the FAA's position that the document notified Congress of its intention to "adopt" exemptions from the FLSA.

Administrator Hinson's introduction to the March 28, 1996 PMS document says:

> "Although Section 347(b) exempts the new personnel system from substantially all of Title 5, FAA has the discretion to adopt the substance of any portion of Title 5 as deemed appropriate.  In some instances, I have decided that FAA employees should be covered by the same provisions that apply to all other Federal employees.  Therefore, the following sections of Title 5 are incorporated by reference in FAA's new personnel management system . . ."  JA 1038.

However, the list of "incorporated" provisions then set out in the document does *not* include either § 5543, the compensatory time provision, *or* §§ 6121-6128, the credit hours provisions.  And, significantly, the statement that "FAA has the discretion to adopt the substance of any portion of title 5 as deemed appropriate" makes no distinction between "adopting" provisions that do not violate any other applicable law and "adopting" those that do.  In short, it is wrong to suggest that

the document notified anyone of the FAA's plan to "adopt" provisions exempting the FAA from section 7 of the FLSA.

Similarly, while the "Staffing" section of the PMS document includes a statement that "FAA employees shall continue to be eligible to work flexible and compressed work schedules under the same criteria, procedures, and limitations that were applicable on March 31, 1996 . . . ," (JA 1054), there is no reference to credit hours. Compensatory time is mentioned as a subject to be "address[ed]" at a future date (JA 1055-56), although the document does state that employees who abstain from work because of their religious beliefs may "elect to engage in overtime work for time lost" and "shall be granted equal compensatory time off . . . in lieu of overtime pay." JA 1058. If anything, the implication here would appear to be that employees who engaged in overtime work for other reasons *would* receive overtime pay.

Thus, the FAA's claim that Congress "approved" of its implementing §§ 5543 and 6123 in violation of the FLSA by simply referring to the PMS in the Improvement Act finds no support in the PMS Document.

### 6.    The Statute Does Not Authorize the FAA and Union Representatives to Agree to Practices That Violate the FLSA

Section 40122(a)(1) states that, "[i]n developing and making changes to" its PMS, the FAA Administrator "shall negotiate with the exclusive bargaining representatives" of FAA employees.  Relying on this language, and the parties' collective bargaining agreements, the FAA argues that the statute implicitly authorized the FAA and union representatives to agree to compensatory time and credit hour practices that violate the FLSA overtime provisions.

This argument is quickly disposed of.  It is a bedrock principle of FLSA jurisprudence that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."  *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)); *see also Bernard v. IBP, Inc.,* 154 F.3d 259, 263 (5th Cir. 1998); *Bull v. United States*, 65 Fed. Cl. 407, 414 (2005) ("the *substantive* rights granted individual employees under the FLSA are not, as defendant argues . . . , waivable").  Indeed, the FAA conceded as much before the trial court.  JA 1091.  Moreover, in directing the FAA to negotiate with its employees' union representatives in developing the new PMS, there was plainly no intent in §

40122(a)(1) to authorize the Agency to bargain away or compromise employees'

FLSA or other statutory rights by agreement.

### 7.    The FAA's Interpretation of Section 40122(g) Is Not Entitled to *Chevron* Deference

As an alternative argument, the FAA contends that the Appropriations Act is

ambiguous.  Consequently, it argues, the Court is required under *Chevron v.*

*Natural Res. Def. Council*, 467 U.S. 837 (1984), to defer to the FAA's

interpretation of the statute.

There are at least three reasons why this argument fails.  First, although the

FAA tries to divert the Court's attention from this reality, this is an FLSA case and

there is no ambiguity whatsoever as to what *that* statute requires: in the absence of

some explicit exemption, and there is none, the FAA must pay overtime

compensation to its covered employees in cash at a rate of time-and-a-half.  29

U.S.C. § 207(a).  No exemption to that requirement is provided by 49 U.S.C. §

40122(g)(2) – to the contrary, that provision states that the *only* FLSA overtime

exemptions in title 5, §§ 5543 and 6121-6128, "shall not apply" to FAA

employees.  And, as shown above at pages 30-39, the phrase "greater flexibility"

simply does not constitute authorization for the FAA to craft new FLSA

exemptions for the FAA.

Moreover, as shown above at pages 31-33,  fundamental principles of

statutory interpretation compel the conclusion that the clear, specific, and plainly

applicable overtime provisions of the FLSA are not overridden by the general and vague provisions of the later-enacted Appropriations Act.  Hence, the Appropriations Act is *not* ambiguous: it clearly does not permit the FAA to craft an exemption for itself from the FLSA.

Second, even if the statutory text were ambiguous, the legislative history – as the trial court concluded – is not.  As shown above at pages 37-39, that history provides no indication of a Congressional intent to exempt the FAA from the FLSA's overtime requirements and, instead, reflects an intention that the Agency design a PMS that permits it to motivate, incentivize, and advance its employees more like a private sector employer – to whom the FLSA plainly would apply. Again, because it is clear that the legislative history reflects no intent on Congress's part to exempt the FAA from the FLSA, *Chevron* does not apply.

Finally, there is an important difference between the legislation at issue here and the statutes at issue in *Chevron* and its progeny.  *Chevron*, and the ensuing cases applying its principles of deference, involved statutes that created complex and detailed statutory schemes and that included express grants of authority to agencies to administer and implement the rules set out in the statute.  *Chevron,* 467 U.S. at 848 (deferring to EPA regulation implementing the "lengthy, detailed, technical, complex, and comprehensive" statutory rules in the Clean Air Act Amendments of 1977); *City of Arlington v. FCC*, 133 S. Ct. 1863, 1867 (2013)

(deferring to FCC declaratory ruling issued pursuant to "broad statutory authority to implement the provisions of the Communications Act of 1934"); *CFTC v. Schor*, 478 U.S. 833, 845 (1986) (deferring to CFTC regulation implementing the Commodity Exchange Act). Those grants of authority were made because of the agencies' "great expertise" in the area being regulated, *Chevron*, 467 U.S. at 865; *see also Schor*, 478 U.S. at 845, and the understanding that, because of that expertise, the agencies' personnel were "in a better position" to fill in any gaps in the statute, *Chevron*, 467 U.S. at 865. Here, by contrast, the FAA – which concededly has an area of expertise in aviation and air safety – is arguing that it is entitled to deference in its interpretation of a statute that directs it to create a *personnel management system*. That statute does *not* grant the FAA broad authority to "implement" or "administer" a complex set of rules set out in the statute; it merely directs the FAA to create personnel policies, with the general goal of "greater flexibility" and within the parameters set out in the statute. Those parameters include, most notably, the limitation that the provisions of title 5 "shall not apply," with certain limited exceptions. None of those exceptions affect the applicability of another statute – the FLSA – about which the FAA has no expertise whatsoever and which it has received no delegation of authority to implement or interpret. There is nothing to warrant deference to the FAA's

"interpretation" of the Appropriations Act as granting it discretion to exempt itself from the FLSA.

### 8. OPM's Regulation Authorizing Straight-Time Compensatory Time and Credit Hours Does Not Apply to the FAA

Finally, the FAA argues that the FAA is authorized by 5 C.F.R. § 551.531 to offer compensatory time or credit hours in lieu of cash overtime pay for overtime hours worked. The FAA contends that this regulation was issued pursuant to 29 U.S.C. § 204(f), which grants the Office of Personnel Management authority to implement the FLSA with respect to federal employees. According to the FAA, because "[t]here is no dispute that FAA employees are Federal employees," it follows that "OPM is authorized to implement the FLSA as to plaintiffs." FAA Brief, 57-58. Any other conclusion, the FAA contends, "assumes an implied amendment of" 29 U.S.C. § 204(f), removing OPM's authority to implement the FLSA with respect to FAA employees. *Id.*

The FAA argument, thus, is essentially that when OPM issued 5 C.F.R. § 551.531, its sole authority to do so was the FLSA; therefore, the court should defer to OPM's regulation regardless of whether it was intended to apply to FAA employees. This is, of course, not the case. First of all, OPM does not have authority to issue regulations that are flatly inconsistent with the statute it is entrusted to implement. *Bull v. United States*, 68 Fed. Cl. 212, 224 n.9 (2007)

("OPM regulations must be consistent with the FLSA itself and with the standards set by the DOL for the private sector."); *Aamold v. United States*, 39 Fed. Cl. 735, 739 n.4 (1997) (same).

In fact, as the trial court concluded, it is clear that OPM's authority to issue § 551.531 – stating exceptions to the otherwise applicable FLSA overtime requirements – came from 5 U.S.C. § 5543 and §§ 6121-6128, the *statutory* provisions that create such exceptions, permitting the use of compensatory time and credit hours for certain federal employees.  JA 22-25, 28.  OPM explained as much in the introductory text of the interim rule that preceded the promulgation of § 551.531, 56 Fed. Reg. 20339 (May 3, 1991), which states that "Part 551 has also been revised to reflect the new . . . provision that amends section 5543(a)(1) of Title V United States Code, to provide that on the request of an employee, the head of an agency may grant an employee compensatory time off from the employee's scheduled tour of duty instead of payment under Title V or the FLSA for an equal amount of time spent in irregular or occasional overtime work."  It explained this again in the statement of authority for Part 551 of the final regulations, 64 Fed. Reg. 69,180 (Dec. 10, 1999), which lists 5 U.S.C. 5542(c) and 29 U.S.C. § 204(f) as the authority for C.F.R. Part 551.  And it explains it in the text of the regulation itself, § 551.531(b), which states that "[a]t the request of an employee, as defined in 5 U.S.C. 2105, the head of an agency may grant compensatory time off from an

employee's basic work requirement under a flexible work schedule under 5 U.S.C. 6122 . . . ."  *See also* 5 C.F.R. § 551.501(a)(6) ("employees shall not receive overtime compensation "[f]or hours of work that are not 'overtime hours,' as defined in 5 U.S.C. 6121, for employees under flexible or compressed work schedules.").

As demonstrated at length above, the statutory provisions in title 5 that provided OPM the authority to issue § 551.531 do not apply to the FAA's PMS under the reform legislation.  Consequently, the OPM regulation can have no application to FAA employees either and the government's attempt to rely upon it here fails.

# CONCLUSION

For the foregoing reasons, the judgment of the U.S. Federal Court of Claims

should be affirmed.

/s/ Gregory K. McGillivary
GREGORY K. MCGILLIVARY
SARA L. FAULMAN
WOODLEY & MCGILLIVARY
1101 Vermont Ave. NW
Suite 1000
Washington, D.C. 20005
Tel: (202) 833-8855

August 2, 2013                           Attorneys for Plaintiffs-Appellees

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on | 08/02/2013 |
by:

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Gregory K. McGillivary |          | /s/ Gregory K. McGillivary |
Name of Counsel                     Signature of Counsel

Law Firm | Woodley & McGillivary |

Address | 1101 Vermont Ave., NW, Suite 1000 |

City, State, ZIP | Washington, DC 20005 |

Telephone Number | (202) 833-8855 |

FAX Number | (202) 452-1090 |

E-mail Address | gkm@wmlaborlaw.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

**Form 19**

FORM 19.  Certificate of Compliance With Rule 32(a)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [           13,924           ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using [           *Microsoft Word 2003*           ] in [           *Times New Roman, 14 Pt. Font*           ], or

☐    The brief has been prepared in a monospaced typeface using [   *state name and version of word processing program*   ] with [ [   *state number of characters per inch and name of type style*   ].

_____
/s/ Gregory K. McGillivary
(Signature of Attorney)
_____
Gregory K. McGillivary
(Name of Attorney)
_____
Appellees
(State whether representing appellant, appellee, etc.)
_____
08/02/2013
(Date)

Reset Fields